## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM J. TRACEY III,<br><br>*Plaintiff,*<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br>EXPERIAN INFORMATION SOLUTIONS,<br>INC.,<br>AMERICAN HONDA FINANCE<br>CORPORATION,<br>BANK OF AMERICA,<br>FIRST NATIONAL BANK OF OMAHA,<br>MUNICIPAL CREDIT UNION,<br>VALLEY NATIONAL BANK,<br>MANHATTAN JEEP CHRYSLER DODGE,<br>INC., and<br>JEFFREY MONNINGER,<br><br>*Defendants.* | Civil Action No:. 17-cv-6166<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

Plaintiff William J. Tracey III, by and through his attorneys, Kakalec & Schlanger, LLP, complaining of the defendants, alleges as follows:

1.      This is an action for actual, statutory, and punitive damages, injunctive relief, and statutory attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), and the New York Fair Credit Reporting Act, and New York General Business Law § 380, et seq. ("NY FCRA").

2.      Plaintiff also brings claims for defamation and negligent hiring, training and supervision, as against two of the Defendants named herein.

1

3.      Congress enshrined within the FCRA the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. §1681(a)(4).

4.      Congress stated plainly the purpose of the FCRA, namely "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. §1681(b).

5.      The Defendants consist of the two national credit reporting agencies:  Equifax Information Services LLC and Experian Information Solutions, Inc. (the "CRA Defendants"); and the "furnisher[s] of information" to those agencies:   American Honda Financial, Bank of America, First National Bank of Omaha, Municipal Credit Union and Valley National Bank (the "Furnisher Defendants"); and Manhattan Jeep Chrysler Dodge, Inc. (an auto dealership) and Jeffrey Monninger (the General Manager of the dealership) (collectively, the two "Dealership Defendants").

6.      Plaintiff discovered inaccurate derogatory information on his credit reports and disputed the same directly with the CRA Defendants who, in turn and upon information and belief, communicated the same to the Furnisher Defendants.

7.      The Furnisher Defendants are each a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2, *et seq.*).

8.      The Furnisher Defendants violated the FCRA by:

a.   failing to conduct a reasonable investigation of Plaintiff's dispute,

b. failing to review all relevant information provided by consumer reporting agencies, and

c. failing to promptly modify, delete, or permanently block any information it could not verify as accurate, in violation of 15 U.S.C. §1681s-2(b)(1).

9. The CRA Defendants violated the FCRA (and analogous provisions of the NY FCRA) by:

a. failing to conduct a reasonable reinvestigation of Plaintiff's dispute and delete or modify that information, in violation of § 1681i, and upon information and belief, failing to perform certain other related duties pursuant to and in violation of that same provision,

b. failing to block information that Plaintiff identified as resulting from an alleged identify theft, in violation of § 1681c-2, and upon information and belief, failing to notify the Furnisher Defendants that the information has been blocked, in violation of § 1681c-2(b), and

c. failing to maintain procedures to ensure the maximum possible accuracy of the information it reported about Plaintiff, in violation of § 1681e(b).

10. As a direct and proximate result of the Defendants' negligent and willful actions, conduct, and omissions including, upon information and belief, publishing inaccurate derogatory information to third-parties, Plaintiff suffered cognizable actual damages (both economic and non-economic) including but not limited to credit denials, and/or offers for credit at higher interest rates, health issues, damage to his reputation, emotional distress, embarrassment, aggravation, and frustration.

11.     Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

12.     In addition, the Dealership Defendants negligently hired, retained, trained, and supervision, also entitling to Plaintiff to an award of punitive damages.

## JURISDICTION AND VENUE

13.     Plaintiff William J. Tracey III brings this action for damages resulting from the theft of his identity and the use of his personal information to procure financing for automobiles.

14.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p.

15.     This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.     Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events and omissions complained of took place in this District and Defendants maintain offices, transact business, and are otherwise found in this district.

## PARTIES

17.     Plaintiff William J. Tracey III is a natural person and a citizen of New York.

18.     Mr. Tracey is a retired Captain in the New York Police Department who served for twenty years.

19.     Equifax Information Services LLC ("Equifax") is a Georgia limited liability company, duly authorized and qualified to do business in the State of New York.

20.     Experian Information Solutions, Inc. ("Experian") is an Ohio corporation, duly authorized and qualified to do business in the State of New York.

21.     Equifax and Experian are each a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and NY FCRA (G.B.L. §  380-a(e)).

22.     American Honda Finance Corporation is a California corporation, duly authorized and qualified to do business in New York.

23.     Upon information and belief, Bank of America is a North Carolina corporation, duly authorized and qualified to do business in New York.

24.     Upon information and belief, First National Bank of Omaha is a Nebraska Corporation, duly authorized to do business in New York.

25.     Upon information and belief, Municipal Credit Union ("MCU") is a New York credit union.

26.     Upon information and belief, Valley National Bank  is a regional commercial bank with headquarters in Wayne, New Jersey, duly authorized and qualified to do business in New York.

27.     Manhattan Jeep Chrysler Dodge, Inc. ("MJCD") is a domestic New York corporation.

28.     MJCD is engaged in the business of selling and leasing automobiles.

29.     Jeffrey Monninger is a natural person and, upon information and belief, a citizen of New York.

30.     Upon information and belief, Mr. Monninger is the General Manager of MJCD.

### FACTS

### Background

31.     Plaintiff is the victim of identity theft by an individual named Andrew Rector and his co-conspirator, Ted Plenge, who was—at the time of the events in question—an employee of MJCD, working in its finance department.

32.     Plaintiff met Mr. Rector in or about the year 2013 and the two became friends, frequently socializing together.

33.     Mr. Rector was engaged the business of renting livery cars.

34.     Upon information and belief, Mr. Rector operates businesses known as AR Holdings NYC LLC, Swag Tracker LLC, Auto NYC LLC and AutoWorld NYC(?).

35.     In 2016, Mr. Rector asked Mr. Tracey to co-sign a business auto loan for Mr. Rector's company.

36.     In connection with this request, Mr. Rector offered to pay Mr. Tracey $7,500 (which was later increased to $10,000) in return for Mr. Tracey filling out and submitting a credit application at MCJD, in order to determine whether Mr. Tracey's credit was sufficient to help Mr. Rector qualify for an auto loan and to explore the possibility of Mr. Tracey serving as a guarantor on a single business loan for Mr. Rector.

37.     Mr. Rector explained to Mr. Tracey at the time that his profits from the additional vehicle would be high and thus justified this arrangement.

38.     Mr. Tracey to submit a credit application in order to have his credit worthiness assessed, but never agreed to go forward with any particular loan transaction involving Mr. Rector or any transaction at MJCD.

39.     As part and parcel of the Comfort Auto business credit application, Mr. Tracey filled out his legal name, home address, social security number, employment information, and other details concerning his personal and financial affairs.

40.     Mr. Tracey also provided a copy of his driver's license to MJCD.

41.     Mr. Tracey gave this completed Comfort Auto application directly to Mr. Rector and Ted Plenge, a salesman at the MJCD (Mr. Rector and Mr. Plenge together, the "Identity

Thieves"), who informed Mr. Tracey that MJCD would "get back to him" once it had run his credit.

42.     Mr. Tracey also went to Honda of Manhattan (a now defunct auto dealership) with the Identity Thieves and filled out a business credit application, including Mr. Tracey's legal name, home address, social security number, employment information, and other details concerning his personal and financial affairs

43.     Mr. Tracey submitted a credit application to Honda of Manhattan in order to have his credit worthiness assessed, but never agreed to go forward with any particular loan transaction involving Mr. Rector or any transaction at Honda of Manhattan.

44.     Mr. Tracey did not hear back concerning either credit application.

45.     Mr. Tracey thus consented to the running of his credit, but did not agree to purchase any vehicle(s); nor to finance or guarantee any loan of any kind.

46.     Mr. Tracey did not sign any Retail Instalment Contracts or purchase orders, and did not receive the use of any vehicle(s).

**Misuse of Identity and Financial Information**

47.     Upon information and belief, in 2016 the Identity Thieves conspired to and did in fact fraudulently consummate approximately 25 (twenty-five) automobile sales transactions at the MJCD dealership using Mr. Tracey's identity.

48.     As part and parcel of the above fraudulent vehicle purchases, the Identity Thieves used Mr. Tracey's identity in order to procure financing.

49.     Specifically, in connection with these vehicle purchases, the Identity Thieves, on information and belief, conspired to and did in fact consummate at least 25 vehicle loans using Mr. Tracey's identity.

50.     These transactions were done without Mr. Tracey's knowledge or consent.

51.     Mr. Tracey has never signed or co-signed for any auto loans through the MJCD dealership, and has never signed any paperwork in connection with purchasing cars at MJCD other than the credit application discussed above.

52.     Upon information and belief, the Identity Thieves used Mr. Tracey's identity to purchase or attempt to purchase five or more vehicles from Honda of Manhattan.

53.     Upon information and belief, the Identity Thieves also used Mr. Tracey's identity to purchase or attempt to purchase one or more vehicles from Country Lincoln Mercury West LLC d/b/a Ford Lincoln of Queens Blvd.

54.     Upon information and belief, the Identity Thieves used Mr. Tracey's identity to open or attempt to purchase one or more credit card accounts (including with American Express and First Bank), bank accounts or lines of credit.

55.     Furthermore, it appears the Identity Thieves attempted to enter into additional financial arrangements using Mr. Tracey's identity, but could not fully consummate the transactions.

56.     Thus, the Identity Thieves applied for multiple lines of credit and opened multiple fraudulent credit/loan/installment accounts in Plaintiff's name.

57.     Mr. Tracey did not consent to the use of his name or financial information by the Identity Thieves to purchase the vehicles, nor did he consent to borrow funds for the purchase of the above vehicles.

58.     Mr. Tracey also did not consent to the use of his name or financial information by the Identity Thieves to seek financing on the vehicles or establish credit card accounts.

## Discovery of the Identity Theft

59.     In or about August 2016, Mr. Tracey was contacted by various banks regarding fraudulent auto loans and/or credit cards in his name.

60.     Mr. Tracey discovered that his identity had been stolen and was being used in a large number of vehicle sales and financing transactions at auto dealerships.

61.     Subsequently in August 2016, Mr. Tracey met with Mr. Rector, Brendan Regan (a close friend of Mr. Tracey's and also a victim of the Identity Thieves) and Jeffrey Monninger at the dealership location of MJCD.

62.     During the August 2016 meeting, Mr. Monninger agreed to "straighten out" the wrongdoing of Mr. Plenge and provide documents to Mr. Tracey concerning the fraudulent transactions.

63.     Upon information and belief, despite Mr. Monninger's offer of assistance to Mr. Tracey, Mr. Monninger has repeatedly, falsely reported to third-parties that Mr. Tracey was part of a fraudulent scheme with the Identity Thieves and is responsible for the transactions initiated by the Identity Thieves.

**Report of the Identity Theft**

64.     Following Mr. Tracey's discovery that his identity had been stolen, Mr. Tracey filed a New York State Police report with the Midtown North Detective Squad, and an identity theft report with the Federal Trade Commission.

65.     On December 8, 2016, TransUnion sent Mr. Tracey correspondence confirming that a Security Freeze had been placed on his credit report and an investigation was underway.

66.     On December 19, 2016, Experian sent Mr. Tracey correspondence confirming that an Extended Fraud Victim Alert had been placed on his credit report.

**Tradeline Disputes**

67.     In December 2016, Mr. Tracey notified the CRA Defendants (Experian and Equifax) of the identity theft via telephone and mailed letter.

68.     Mr. Tracey told the CRA Defendants (as well as the Furnisher Defendants) that one or more of the accounts appearing on his credit reports were opened and used fraudulently by the Identity Thieves in Plaintiff's name, without his knowledge or consent.

69.     Plaintiff disputed the reporting of Tradeline errors to the CRA Defendants and to the Furnisher Defendants.

70.     Those disputes detailed the reasons that the accounts and Tradeline errors were not attributable to Plaintiff.

71.     Plaintiff's disputes to the CRA Defendants included a Fraud Affidavit listing out each of the accounts regarding which he was a victim of identity theft.

72.     Plaintiff also provided the CRA Defendants with a police report regarding the theft of his identity.

73.     Starting in December 2016 and continuing throughout 2017, Mr. Tracey also reported the identity theft directly to many of the Furnisher Defendants, and issued letters to them stating that multiple loans and accounts were fraudulently obtained.

74.     In support of his disputes made directly to the Furnishers, Mr. Tracey provided, *inter alia*, the fraud affidavit, a police report regarding the theft of his identity, a forensic examination of handwriting analysis of the signatures on the loans, which concluded the signatures were forgeries, as well as EZ Pass records to demonstrate he was out of the New York City on the dates the documents were purportedly signed.

75.     However, the fraudulent activities of the Identity Thieves, including several automobile loans, bank and credit card accounts with the Furnisher Defendants continue to appear on Plaintiff's credit reports with the CRA Defendants despite Plaintiff's efforts to have them removed.

**Equifax**

76.     On December 8, 2016, Plaintiff contacted Equifax by telephone, informed its representatives that he had been the victim of identity theft, and noted the numerous Tradeline errors and erroneous accounts on his credit report.

77.     Equifax assigned Mr. Tracey report number 6343056119 and instructed him to submit materials in support of his disputes in writing.

78.      On December 17, 2016, Mr. Tracey submitted a letter with accompanying written materials to Equifax, including, but not limited to, an FTC Identity theft report identifying each Tradeline error and account and/or loan appearing on his credit report.

79.     On December 19, 2016, Experian wrote to Mr. Tracey informing him that an Extended Fraud Victim Alert had been added to his credit report, which would remain on his credit report for seven years.

80.     On or about January 19, 2017, Mr. Tracey disputed additional Tradeline errors that appeared on his Equifax credit report and sent additional documents, at the request of Equifax, to verify his identity and demonstrate the identity theft, including a police report.

81.     On or about February 14, 2017, Equifax concluded its investigation of Mr. Tracey's disputes and sent him a summary of the changes to his credit report.

82.     Equifax deleted several Tradeline errors and fraudulent accounts, including entries from Brandl Auto Connection, Capital One Auto, Chase Auto, Chrysler Capital, U.S. Bank, and U.S. Bank N.A.

83.     However, multiple Tradeline errors that Mr. Tracey had disputed remained on his credit report.  These remaining Tradeline errors included account entries from the following Furnishers:  American Honda Finance, Bank of America, N.A., First National Bank of Omaha, Municipal Credit Union, and VNB Loan Services (i.e., Valley National Bank).

84.     In addition, Mr. Tracey's report continues to have a Tradeline error regarding a request for his credit history from the following Furnisher:  First National Bank of Omaha.

**Experian**

85.     On December 8, 2016, Plaintiff contacted Experian by telephone, informed its representatives that he had been the victim of identity theft, and noted the numerous Tradeline errors and erroneous accounts on his credit report.

86.     Experian assigned Mr. Tracey report number 042870771 and instructed him to submit materials in support of his disputes in writing.

87.      On December 17, 2016, Mr. Tracey submitted a letter with accompanying written materials to Experian, including, but not limited to, an FTC Identity theft report identifying each Tradeline error and account and/or loan appearing on his credit report.

88.     On December 19, 2016, Experian wrote to Mr. Tracey informing him that an Extended Fraud Victim Alert had been added to his credit report, which would remain on his credit report for seven years.

89.     On or about January 19, 2017, Mr. Tracey disputed additional Tradeline errors that appeared on his Experian credit report and sent additional documents, at the request of Experian, to verify his identity and demonstrate the identity theft, including a police report.

90.     On or about January 23, 2017, Experian concluded its investigation of Mr. Tracey's disputes and sent him a summary of the changes to his credit report, which it supplemented shortly thereafter on January 30, 2017.

91.     Experian deleted several Tradeline errors and fraudulent accounts, but has, as of a credit report retrieved on July 28, 2017, failed to correct the erroneous tradeline with regard to First National Bank of Omaha.

**Defendants' Failures to Comply with the FCRA and NYFCRA**

92.     Mr. Tracey properly and repeatedly disputed the incorrect tradelines on his credit reports.  Nonetheless, all Defendants failed to modify or delete the accounts and Tradeline errors and, instead, continued to report the accounts and Tradeline errors on Plaintiff's credit reports.

93.     Despite Plaintiff's exhaustive efforts to date, Defendants have nonetheless repeatedly failed to perform reasonable investigations and/or reinvestigations of Plaintiff's disputes as required by the FCRA, have failed to remove the inaccurate information, and have continued to attribute the accounts and Tradeline errors to Plaintiff on his credit reports.

94.     At all relevant times, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under Defendants' direct supervision and control.

95.     The conduct of the Defendants, as well as that of their agents, servants and/or employees, was negligent, malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and Plaintiff's rights.

13

**Damages**

96.     As a result of Defendants' conduct, Plaintiff suffered actual damages in the form of economic and non-economic harm, both of which are cognizable pursuant to the FCRA and NY FCRA.

97.     Plaintiff has suffered actual damages in the form of financial, medical expenses, dignitary harm arising from the injury to his credit rating and reputation.  Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

98.     Plaintiff's credit reports and file have been obtained from Defendants and been reviewed many times by prospective and existing credit grantors and extenders of credit.  The inaccurate information has been a substantial factor in precluding Plaintiff from receiving many different credit offers and opportunities, known and unknown, and from receiving the most favorable terms in financing and interest rates for credit offers that were ultimately made.

99.     Additionally, the inaccurate credit reporting cost Plaintiff significant time in pursuit of a corrected report, mental anguish and anxiety, stress, and an inability to work and function.

100.     Furthermore, Plaintiff has required medical treatment, including but not limited to, prescription medication to treat anxiety as well as his persistent coughing and wheezing caused by Defendants' violations of law.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF FCRA § 1681s-2(b)
### Against All Furnisher Defendants
### (Furnishers of Information to CRAs)

101.     Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

102.    The Furnisher Defendants violated §1681s-2(b) by its acts and omissions, including, but not limited to:

      a.  failing to conduct a reasonable investigation of Plaintiff's dispute,

      b.  failing to review all relevant information provided by consumer reporting agencies, and,

      c.  failing to promptly modify, delete, or permanently block any information it could not verify as accurate, in violation of §1681s-2(b)(1).

103.    As a result of the Furnisher Defendants' violations of §1681s-2(b)(1), Plaintiff suffered actual damages including but not limited to loss of credit, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

104.    These violations of §1681s-2(b)(1) were willful, rendering the Furnisher Defendants liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

105.    In the alternative, the Furnisher Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. §1681o.

### SECOND CAUSE OF ACTION
### VIOLATIONS OF FCRA § 1681e(b), § 1681c-2, and § 1681i
### Against the CRA Defendants (Equifax and Experian)

106.    Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

107.    The CRA Defendants each violated multiple sections of 15 U.S.C. § 1681i by its acts and omissions including but not limited to:

    a.   failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file in violation of § 1681i(a)(1);

    b.   by failing to review and consider all relevant information submitted by Plaintiff in violation of § 1681i(a)(4); and

    c.   by failing to properly delete the disputed inaccurate items of information from Plaintiff's credit files or modify item of information upon a lawful reinvestigation in violation of § 1681i(a)(5).

108.    The CRA Defendants each violated § 1681c-2 by failing to block information that Plaintiff identified as resulting from an alleged identify theft, and upon information and belief, failing to notify the Furnisher Defendants that the information has been blocked, in violation of § 1681c-2(b).

109.    The CRA Defendants each violated 15 U.S.C. § 1681e(b) by its conduct, acts and omissions including but not limited to failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of her credit report and credit files that it published and maintained.

110.    As a result of the CRA Defendants' violations of § 1681i, §1681c-2, and §1681e(b), Plaintiff suffered actual damages including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

111.    These violations of § 1681i, § 1681c-2, and § 1681e(b) were willful, rendering the CRA Defendants liable for actual damages, statutory damages, costs and reasonable attorney's

fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

112.    In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681o.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF NY FCRA §380-f and §380-j
### Against the CRA Defendants (Equifax and Experian)

113.    Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

114.    The CRA Defendants each violated multiple sections of the NY FCRA (NY GBL §§380- 380-u) by its acts and omissions including:

   a.    failing to promptly reinvestigate Plaintiff's dispute to determine whether the disputed information is inaccurate and record the current status of the disputed information in violation of §380-f(a);

   b.    failing, after determining that the disputed information is in error or that it can no longer be verified, to promptly expunge the item and otherwise correct the file and refrain from reporting the item in subsequent consumer reports, in violation of §380-f(b); and

   c.    failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of her credit report and credit files that it published and maintained in violation of §380-j(e).

115.    These violations of §380-f and §380-j(e) were willful, rendering the CRA Defendants liable for actual damages, costs and reasonable attorney's fees, and punitive damages

in an amount to be determined by the Court pursuant to §380-l and entitling Plaintiff to injunctive relief restraining Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

116.    In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover actual damages and costs and reasonable attorney's fees pursuant to §380-m as well as injunctive relief restraining Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

***FOURTH CAUSE OF ACTION***
**NEGLIGENT HIRING, RETENTION, TRAINING, AND SUPERVISION**
**Against the Dealership Defendants**

117.    Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

118.    The Dealership Defendants failed to exercise reasonable care in selecting, instructing and supervising the employees and/or agents it hired to sell motor vehicles and arrange vehicle purchase loans.

119.    The Dealership Defendants' employees acted willfully, unlawfully and in an intentionally fraudulent manner towards Plaintiffs as set forth herein.

120.    Upon information and belief, at all times Ted Plenge was subject to the Dealership Defendants' direct supervision and control.

121.    The Dealership Defendants knew or should have known of Mr. Plenge's propensity to commit the unlawful acts described herein or should have known of such propensity had they conducted an adequate hiring procedure.

122.    The Dealership Defendants do not properly train or supervise the employees and/or agents they use to sell vehicles and arrange for vehicle financing.

123. Indeed, the fact that an employee of the Dealership Defendants was able to take out at least 25 loans under one individual's name suggests, at best, gross negligence on the part of the Dealership Defendants and, at worst, collusion.

124. The Dealership Defendants owed a duty of care to Plaintiff that its employees and agents would act in accordance with state and federal laws.

125. As a direct result and proximate cause of the Dealership Defendants' employees and/or agents' unreasonable, unfair, illegal and fraudulent conduct, Plaintiff has suffered harm including, without limitation, the damages set forth in Counts I-III above.

126. As a result of the foregoing, Plaintiff is entitled to actual and punitive damages, and reasonable costs.

### FIFTH CAUSE OF ACTION
### DEFAMATION
### Against the Dealership Defendants

127. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

128. Upon information and belief, the Dealership Defendants, through the written and oral communications of Mr. Monninger, made false and defamatory statements concerning Mr. Tracey.

129. Specifically, and without limitation, Mr. Monninger stated in oral and written form that Mr. Tracey was responsible for the vehicles purchased from MJCD and was present at the Dealership on the days in question.

130. The Dealership Defendants published these statements to third-parties, including the CRA Defendants.

131.    The Dealership Defendants knew or should have known that that these statements were false.

132.    Indeed, because Mr. Tracey had so clearly articulated that he was a victim of the Identity Thieves, repeatedly informed the Dealership Defendants of same, and provided numerous proofs of same to Defendants in the form of police reports and affidavits, upon information and belief, MJCD and Mr. Monninger's statements to third-parties, including the CRA Defendants, concerning Mr. Tracey demonstrate wanton and reckless negligence, if not malice.

133.    The publication of these false and defamatory statements to said third parties resulted in injury, including pecuniary injury, to Mr. Tracey as outlined in ¶¶90-93 above.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendants:

1.    awarding Plaintiff against each CRA Defendant and Furnisher Defendant actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o as well as, with regard to the CRA Defendants, NY GBL § 380-l and § 380-m;

2.    ordering the CRA Defendants:

   a.    to immediately delete all inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information, and

   b.    to send updated and corrected credit report information to all persons and entities to whom they have reported inaccurate information about Plaintiff within the last three years;

20

3.     enjoining the CRA Defendants from violating Plaintiff's NY FCRA rights;

4.     awarding Plaintiff against each Dealership Defendant actual and punitive damages, and reasonable costs; and

5.     such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated:  August 14, 2017

Respectfully submitted,

By:  Evan S. Rothfarb
Daniel A. Schlanger
KAKALEC & SCHLANGER, LLP
85 Broad St., 18th Floor
New York, NY 10004
T:  212.500.6114
F:  646.612.7996
erothfarb@kakalec-schlanger.com
dschlanger@kakalec-schlanger.com

*Attorneys for Plaintiff*